IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACEO HOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 932 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| OFFICER A. CAREY, OFFICER M. WALSH, | ) | |
| OFFICER C. EVANS, SGT. W. KELLY #1624, | ) | |
| OFFICER FILLIPO, and the CITY OF | ) | |
| CHICAGO | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maceo Holden ("Holden") brought suit against Chicago police offers A. Carey ("Carey"), M. Walsh ("Walsh"), C. Evans ("Evans"), and Fillipo, Sergeant W. Kelly ("Kelly") and the City of Chicago ("City") alleging excessive force, false arrest and conspiracy under 18 U.S.C. § 1983, violation of Equal Protection, and *Monell* and indemnification claims against the City. Carey, Walsh, Kelly, and Fillippo (collectively the "individual defendants") now bring a Motion for Summary Judgment as to all claims against Kelly and Fillipo and Count IV, Holden's Class of One Equal Protection claim, as against all Defendants. Holden conceded summary judgment in favor of Kelly and Fillippo, and thus the Court limits this Opinion to discussion of Holden's Equal Protection claim.

1

**STATEMENT OF FACTS**

Holden was arrested on February 18, 2005 and charged with unlawful use of a weapon in violation of Chapter 720 Section 5/24-1(a)(10) of the Illinois Criminal Code of 1961. Def. 56.1 at ¶ 5. The charge was related to a loaded .357 magnum pistol recovered in relation to his arrest. *Id*.

According to Holden, he was frightened when a male police officer pulled up behind him in a police car while he was urinating in an alley and yelled a racial epithet at him. *Id*. at ¶ 6. He ran, scaled two gates, ran through a gangway and jumped onto Pulaski Avenue where he surrendered to two male police officers who arrived in a second marked police car. *Id*. at ¶¶ 6-7. One of the two arresting officers grabbed Holden's leg and "snapped it in half," making an audible noise, while Holden was lying on the sidewalk. *Id*. at ¶ 8. The officer then threw him into the open door of the police car, slammed the car door against his head several times and punched his injured leg and eye. *Id*. One of the arresting officers then told him he could walk and that he was not going to be transported to the hospital. Pl. 56.1 at ¶ 8. The officers, however, agreed to transport him to the police station but not before stopping in an alley where one of the officers stated that he wanted to kill him. *Id*. at ¶¶ 9-10. At the suggestion of the other officer, however, the two decided to falsely accuse him of a robbery. *Id*. at ¶ 12.

According to Officers Carey and Walsh, they were patrolling in an alley where they observed Holden crouching between two cars acting suspiciously. *Id*. at ¶ 16. When they approached, Holden fled, climbing to the top of a fence, onto a gate and then into a gangway. *Id*. at ¶¶ 16, 19. He then fled from the gangway. *Id*. at ¶ 20. Officers Brzezick and Daly arrived in a second marked police car, apprehended Holden and transported him to the police station. *Id*. at ¶¶ 21, 23.

Holden claims that he was treated differently than other individuals who have had interaction with police officers. Def. 56.1 at ¶ 42. However, at his deposition, he could not identify another person treated differently. *Id*. Holden, however, suggests that some of the actions taken against him and statements made by the officers to him establish differential treatment.

First, although the parties dispute whether Holden had a gun with him at the time of the incident and whether a loaded .357 magnum pistol was recovered from the gangway down which he fled, *see Id*. at ¶¶ 18, 20, 24, they agree that Officer Carey did not call an evidence technician to have the gun fingerprinted. Pl. 56.1 at ¶ 19. Her failure to do so conflicts with General Order 89-6 of the Chicago Police Department which states that absent exigent circumstances, any officer who takes a firearm into custody will, prior to handling the firearm, have it examined for fingerprints if the existence of fingerprints is pertinent to the case. *Id*. at ¶¶ 20-21. Similarly, CPD policy dictates that when force is used against an individual, a tactical response report should be filled out. Walsh did not fill out a tactical response report regarding Holden's arrest. *Id*. at ¶¶ 9-10.

Walsh testified that he has never observed a police officer doing something he or she was not supposed to do or that should be reported to a supervisor. *Id*. at ¶ 1. Walsh further testified that if he had seen any conduct that warranted reporting to a supervisor, including excessive force, arrest without probable cause, or refusal of medical assistance to an injured person in custody, he would have reported it to a superior. *Id*. at ¶¶ 1-3; 6; 11.

## **STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

## **DISCUSSION**

Holden argues that he suffered discrimination as a "class of one" in violation of the Equal Protection Clause. He asserts that he was discriminated against because the officers abused him, did not send the allegedly recovered weapon for fingerprinting, and did not file a tactical report even though Department regulations require that weapons be fingerprinted and officers file tactical reports when they use force.

Generally, Equal Protection claims involve charges of singling out members of a vulnerable group for unequal treatment or allegations that a law or policy makes irrational distinctions between groups of people. *See Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004) *citing Esmail v.*

4

*Macrane*, 53 F.3d 176, 178 (7th Cir. 1995). Plaintiffs may bring Equal Protection claims as a class of one, even though such claims are very difficult to prove. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *McDonald v. Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To succeed, the plaintiff must prove that: 1) he was intentionally treated differently from other individuals similarly situated; and 2) there was no rational basis for the difference in treatment or the cause of the differential treatment was "totally illegitimate animus" by the defendant. *Id*.

The individual defendants argue that this case is ill-suited to Equal Protection analysis and that in any case, Holden has failed to adequately demonstrate that similarly situated individuals were treated differently. Generally, whether individuals are similarly situated is a question of fact for the jury, but courts may grant summary judgment when no reasonable jury could find that this requirement has been met. *Id*. To meet the similarly situated requirement, plaintiffs must prove "that they were treated differently than someone who is prima facie identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see also Sellars v. Gary*, 453 F.3d 848, 850 (7th Cir. 2006) (plaintiff must prove that "such individuals were identical to him in all relevant respects").

Holden relies on two sets of facts in attempting to support his claim of discrimination. First, he notes that Walsh stated in deposition that: 1) he has not seen a police officer act inappropriately; 2) he has not seen a police officer do anything that should be reported to a supervisor; and 3) had he seen conduct that warranted report to a supervisor, such as excessive force or false arrest, he would have reported it. Pl. 56.1 at ¶¶ 1-3, 6, 11. Second, he relies on the mere existence of General Order 89-6, requiring the fingerprinting of guns recovered by CPD, and the fact that tactical reports are generally filled out when officers use force. Pl. 56.1 at ¶¶ 9, 20. Thus, he argues that because

Walsh claims he has not engaged in, or seen police misconduct, and because the handgun was not fingerprinted and no tactical report was filed, he was treated differently from other individuals who interacted with police officers. Holden provides no specific information about any members of this group.

Holden's non-specific evidence is inadequate to sustain a claim of class of one discrimination. First, class of one plaintiffs must identify specific individuals who were similarly situated and who were treated differently and they must present specific evidence of the circumstances of those individuals. *See e.g. Bell*, 367 F.3d at 706-07 (plaintiff identified four other individuals who applied for pier-building permits in the same area and from the same authority and were granted permits without hearings); *Purze*, 286 F.3d at 455 (plaintiff identified individuals in three other developments in the same village who also requested variances from subdivision rules); *Ciechon v. Chicago*, 686 F.2d 511, 522 (7th Cir. 1982) (plaintiff identified a second paramedic who was present and at the same incident and equally responsible for patient care). For example, in *McDonald*, the plaintiff argued that the Village of Winnetka Fire Department followed an established procedure in investigating fires that was not followed in investigating his home fire. He presented a few fire investigation reports of other fires, none of which contained specific details and asserted essentially that he was similarly situated to every resident with a residential structural fire. *McDonald*, 371 F.3d at 1003, 1005. In finding the reports to be inadequate, the court noted that although they suggested that the fire department believed that it properly eliminated non-arson causes of the fires, they did not establish that the fire department actually eliminated non-arson causes. *Id*. at 1005-08. As such, McDonald did not show that the comparators were actually similarly situated. *Id*. at 1005; *see also Lerch v. Green Bay*, No. 07 C 3547, 2008 WL 822254 (7th

Cir. March 27, 2008) (plaintiff whose property was razed identified two other properties dissimilar to his own and submitted pictures of properties he alleged to be in worse condition than his own that were not razed without further detail). Here, Holden asserts only that a huge and amorphous group of individuals, persons who have interacted with police officers, was treated differently than he.

Specific evidence of similarly situated individuals is necessary in class of one claims because individuals must be compared on a very detailed level to determine if they are in fact prima facie identical. For example, in *Bell*, the court examined the individuals that Bell argued were similarly situated but treated differently, holding that the permit-granting authority had begun to apply more rigorous scrutiny in 1998 and had begun emphasizing "flow-through" structures on piers; so individuals who requested permits before 1998 and piers including flow-through structures were not similarly situated. *Bell*, 367 F.3d at 707-08; *See also*, *Purze*, 286 F.3d at 455 (individuals who requested Subdivision Code variances of a different kind or in different subdivisions not similarly situated); *contra Ciechon*, 686 F.2d at 522 (plaintiff paramedic and second paramedic who experienced identical circumstances at the same time and were equally responsible for patient care were similarly situated). Holden fails to provide the Court with any detail of similarly situated individuals to allow it to perform the requisite analysis.[1] For the reasons stated above, the individual defendants' Motion for Summary Judgment is granted.

---

[1] In addition, the Court agrees that this case is ill-suited to equal protection analysis. Indeed, every time a person commits a tort, he is treating the victim differently than he generally treats others, but this does not establish a claim of discrimination. *McDonald*, 371 F.3d at 1009. As such, the similarly situated requirement is necessary to avoid broadening the scope of class of one claims such that they constitutionalize claims better framed as torts. *Id*.

The parties have failed to file their final pretrial order by the due date of August 21, 2008. The trial is set for September 2, 2008 and the parties must file the final pretrial order immediately or risk being sanctioned for their failure to follow this Court's pretrial order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 26, 2008